**IN THE DISTRICT COURT FOR THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS & ST. JOHN**

| | |
|---|---|
| THE SUMMER'S END GROUP, LLC | ) |
| | ) CASE NO. 2019-CV-59 |
| Plaintiff, | ) |
| v. | ) ACTION FOR ANTICIPATORY |
| | ) BREACH, BREACH OF CONTRACT, |
| JIM PHILLIPS a/k/a JAMES PHILLIPS, | ) BREACH OF THE DUTY OF GOOD |
| GENOVEVA RODRIGUEZ, and | ) FAITH AND FAIR DEALING, |
| JAMES PEYTON PHILLIPS | ) TORTIOUS INTERFERENCE WITH |
| | ) CONTRACTUAL RELATIONS, and |
| Defendants. | ) DECLARATORY JUDGMENT |
| | ) |
| | ) **JURY TRIAL DEMANDED** |

## TRIAL BRIEF

**COMES NOW**, Plaintiff, THE SUMMER'S END GROUP, LLC ("SEG") by and through its undersigned counsel, and files this Trial Brief pursuant to the Court's Scheduling Order and LRCi 16.1:

## FACTUAL BACKGROUND

On July 31, 2019, SEG filed a complaint against Jim Phillips (James Owen Phillips) and Genoveva Rodriguez for declaratory judgment (specific performance), anticipatory breach, breach of contract and breach of the duty of good faith and fair dealing. [ECF # 1]. SEG also filed a claim against their son, James Peyton Phillips, for tortuously interfering with the contract for sale and amendments between SEG and James Owen Phillips and Genoveva Rodriguez. [Id.] Plaintiff seeks both compensatory and punitive damages.

Defendants answered the complaint denying the allegations and seeking declaratory judgment and also filing claims for slander of title and to quiet title. [ECF # 8]

Defendants, Jim Phillips (aka James Owen Phillips) and Genoveva Rodriguez, are the title owners of:

> Parcel No. 13 Remainder Carolina (Western and Eastern Portions) Coral Bay Quarter, St. John, U.S. Virgin Islands, consisting or 0.75 acres +/- as shown on OLG#D9-8685-T012 and all improvements on the property. ("the Property") (**ECF # 91- 2**; Deposition of Genoveva Rodriguez ("Rodriguez Dep.")at 41:21-25; 42:1-4 )

On or about December 2, 2013, Jim Phillips (aka James Owen Phillips) and Genoveva Rodriguez entered into a contract for sale for the Property with "The Yacht Club at Summer's End, LLC, and/or assigns." (**ECF # 91- 3**; Contract for Sale). The contract set a purchase price of $4,500,000 with various deposits to be paid in advance of closing. (***Id.***) The Contract further provided that "Seller also agrees to execute all further documents, in addition to a modified Limited Power of Attorney, as may be reasonably needed or requested by Buyer or by the Virgin Islands Department of Planning and Natural Resources, Virgin Islands Coastal Zone Management, or United States Army Corps of Engineers." (**ECF # 91- 3** at 4, ¶ 20). To date, SEG (or its predecessor) has made payments to Defendants Jim Phillips and Genoveva Rodriquez totaling $135,000.00 pursuant to the Contract of Sale and its amendments. (**ECF # 91-4**; Defendants' Supplemental Responses to Interrogatory # 9)

On July 28, 2014, Defendants Jim Phillips and Genoveva Rodriquez and SEG, through its predecessor in interest, entered into a "Amendment to Contract of Sale" (hereinafter "First Amendment") to the December 2, 2013, Contract of Sale. (**ECF # 91-5**). Paragraph 2 of the First Amendment modified paragraph 4 of the Contract of Sale to read as follows:

> 2. Paragraph 4. Shall be deleted and replaced with the following: The Closing shall take place on St. Thomas or St. John, U.S. Virgin Islands on or before August 14, 2014, however failure to do so shall not nullify the contract provided the closing takes place by September 5, 2014. TIME IS OF THE ESSENCE. Buyer acknowledges that Seller's attorneys are not available to close August 15 — September 1, 2014, inclusive.

(**ECF # 91- 5** at ¶ 2).

The First Amendment confirmed that all terms of the Contract of Sale, other than those modified by the First Amendment, remained "in full force and effect." (***Id.***) On June 27, 2016, Defendants Jim Phillips and Genoveva Rodriquez executed a "Second Amendment to Contract of Sale" (hereinafter "Second Amendment") which was sent to and countersigned by SEG on July 5, 2016. (**ECF # 91- 6**). In pertinent part, the Second Amendment modified the original Contract of Sale and the First Amendment as follows:

> 2. Paragraph 4 of the Original Contract, and item "2." of the [First] Amendment to Contract shall be deleted and replaced with the following: The Closing shall take place on St. Thomas or St. John, U.S. Virgin Islands within one (1) week upon receipt of U.S. Army Corps of Engineers (USACE) and U.S. Virgin Islands CZM (CZM) permits as long as neither permit is appealed. Should Closing be delayed beyond a time period that is deemed unacceptable after U.S. Army Corps of Engineers and U.S. Virgin Island CZM permits are issued and not appealed, both Seller and Buyer reserve the right to cancel the Contract by supplying written notification to the other party, informing the other party that in 30 days the Contract will become null and void. If for any reason closing does not take place, all deposits become non-refundable.
>
> 3. Except as expressly amended hereby, the terms of the Original Contract, shall remain in full force and effect.

(**ECF # 91- 6**). In June 2017, Defendant James Peyton Phillips, who identified himself as the son of Defendants Jim Phillips and Genoveva Rodriguez, began to interject himself into the agreements for the sale of the Property, giving legal advice regarding enforceability of the contract for sale and amendments. (**ECF # 91- 7**; June 16, 2017, e-mail from James Peyton Phillips with attached letter from Jim Phillips and Genoveva Rodriguez) On or about June 16, 2017, Defendant James Peyton Phillips sent an email to Chaliese Summers purporting to act as a representative for Defendants Jim Phillips and Genoveva Rodriguez. (***Id.***) In that email, James Peyton Phillips falsely asserted that the Contract of Sale (and the amendments thereto) would

expire on July 26, 2017, unless SEG agreed to some additional terms and payments. (***Id.***) That email also included a letter from Defendants Jim Phillips and Genoveva Rodriguez contending that the Contract of Sale would "expire" on July 26, 2017, and they would "revoke the original Contract for Sale" and the "power of attorney" unless SEG agreed to, *inter alia*, make a non-refundable payment of $450,000 and close within 90 days. **(ECF # 91-7** at 2**)**.

On June 26, 2017, SEG (through counsel) advised Defendants that the SEG and the Defendant sellers had negotiated and agreed to a closing date which was tied to the issuance of both the CZM Permit USACE permit for the development of the marina which had not yet occurred. (**ECF # 91- 8**; June 26, 2017, letter from John Benham, Esq.) On August 18, 2017, James Peyton Phillips, purporting to act as counsel for his parents, wrote a letter to SEG claiming that the contract for sale and amendments were "unenforceable" and that his parents would not honor them. (**ECF # 91- 9**) On October 19, 2017, Jim Phillips and Genoveva Rodriguez sent a letter to the Virgin Islands Legislature attesting that they were revoking all Powers of Attorney and Authorizations for SEG to apply for permits utilizing the Property. (**ECF # 91- 10**).

On May 13, 2019, Defendant James Peyton Phillips sent a letter to Senator Athneil J. Thomas proclaiming himself the "legally authorized representative for the owners of" the Property. **(ECF # 91- 11).** That letter incorrectly claimed that Chaliese Summer's for SEG had submitted a false affidavit for the CZM permit. (***Id.***) In that letter, James Peyton Phillips further declared that:

> As the owner of the most significant of the five remaining parcels, we are writing this letter to inform you that **we have revoked any and all authority from the Summer's End Group for permitting and development activity on our parcel**, including any activity on our shoreline or within the water rights of our property. Our parcel includes over half of the waterfront, and consequently over half of the marina footprint of the Summer's End Group proposed marina. **Removing this parcel from the**

> **plans will require a major redesign of the Summer's End Group marina project.**
>
> **The parcel that is no longer available to the Summer's End Group is the site of our retail mall known as "Coccoloba Plaza" – officially identified as Parcel 13 Remainder, Estate Carolina, Coral Bay, St. John.** We have signed an Affidavit attesting to numerous facts about our relationship with the Summer's End Group, **chief among these being that the Summer's End Group does not have the legally required interest or right to perform development on our parcel. Further, <u>we affirm that such powers shall not be conveyed by us for any development conducted by the Summer's End Group, now or in the future.</u>** Please find this Affidavit attached to this letter. (**ECF # 91- 11**)(emphasis added).

The letter also included a notarized affidavit from Defendants Jim Phillips and Genoveva Rodriquez and Defendant James Peyton Phillips which stated, *inter alia*, that:

> 2. James Peyton Phillips (undersigned), currently has the legal Power of Attorney over all matters pertaining to this parcel, including its use, sale or lease to any and all parties.
>
> 3. In March 2014 we granted the Summers End Group ("SEG") a time-limited Power of Attorney limited in scope to only applying for development permits, and fully revocable by us at any time. That Power of Attorney was subsequently amended on December 1, 2015, and March 16, 2016. **The final amendment expired by its own terms on July 6, 2017 and is no longer in effect.**
>
> 4. In August 2017, subsequent to the expiration of their authority under the Power of Attorney, the Summer's End Group submitted to the United States Army Corps of Engineers ("USACE") a modified plan for a marina project in Coral Bay Harbor, pursuant to their USACE permit application number SAJ-2004-12518 (SP-JCM). This modified plan continued to use our Parcel within the scope of their marina and USACE permit application. **This was done without our permission and without legal authority.**
>
> 5. Our Parcel includes approximately 400' of Coral Bay Harbor shoreline, which is a major component of their marina plan.
>
> 6. **Neither the Summer's End Group, LLC, nor Chaliese Summers, have the requisite property interest to undertake the activity proposed in their USACE permit application.**

> **Furthermore, we have no intention of ever selling the Parcel to SEG or assigning such interest to SEG or an affiliated entity in the future.**
>
> 7. On March 19, 2014, Chaliese Summers signed an affidavit entitled "L&WD5- Proof of Legal Interest" and submitted this to the Virgin Islands Department of Planning and Natural Resources ("DPNR"). This was submitted as one component of a Major CZM Permit for development of a marina in Coral Bay. The CZM Permit Application Number was CZJ-03-14(L) and CZJ-03-14(W).
>
> 8. In this affidavit Ms. Summers swore that she had "the irrevocable approvals, permission, or power of attorney from all other persons with a legal interest in the property to undertake the work proposed in the permit application." This was incorrect at the time it was signed by Ms. Summers inasmuch as she only had a fully revocable power of attorney to apply for permits, and no authority from us to undertake any work involving our Parcel. As of October 2017, Ms. Summers has no authority from us to apply for permits, undertake work, or make any representations regarding her authority to use our Parcel.
>
> 9. On October 9, 2017, we notified all Senators of the Virgin Islands Legislature that the authority we had previously granted to the Summers End Group, LLC to apply for permits using our Parcel had been revoked.
>
> 10.The continuing activity of the Summer's End Group to pursue development permits with the US Virgin Islands DPNR and with the US Army Corps of Engineers, using our Parcel as a major component of their plan, is unauthorized by us, and directly impacts our rights in our property and our ability to sell or lease our property to third parties.
>
> 11. Considering the above, please ensure that any permit application by the Summer's End Group is modified to reflect the fact that our Parcel and associated littoral rights are not included within the scope of their permit application.

**(ECF # 91- 11).**

The subject affidavit contained a number of false statements and other allegations that were entirely contrary to the Contract of Sale and amendments. First, contrary to Defendants' contention in ¶ 3 of the affidavit, the Second Amendment did not expire on July 6, 2017, or on

any other date; the Contract including the subject amendments, are still in effect to this day. (***See* ECF # 91-3, 5-6**) By asserting in ¶¶ 6 and 10 of the affidavit (**ECF # 91-11**) that Defendant Property owners have "no intention of ever selling the Parcel to SEG or assigning such interest to SEG or an affiliated entity in the future," and that SEG's attempts to obtain the marina permits "directly impacts our rights in our property and our ability to sell or lease our property to third parties," Defendants explicitly expressed their intention to breach the Contract of Sale and amendments with SEG. Despite the contractual requirements to do all things necessary to assist SEG in obtaining the federal and local permits for the marina, James Peyton Phillips sent letters to the following governmental agencies/persons claiming that Defendants had revoked all authority to develop the Property for the marina and stating that they would never sell the Property to SEG:

a. St. John CZM Committee;
b. Gregory Richards (CZM Director);
c. Katherine English (attorney for SEG);
d. U.S. Army Corps of Engineers;
e. Gov. Albert Bryan, Jr.
f. Hon. Donna Frett Gregory (V.I. Senator);
g. Hon. Novelle E. Francis (V.I. Senator) ;
h. Hon. Tregenza Roach, Esq. (Lt. Governor);
i. Shikima Jones (St. John Administrator);
j. Yvonne Tharpes, Esq. (Legislative Counsel);

**(ECF # 91-12).**

James Peyton Phillips admitted that the intention in telling various governmental agencies that Defendants were revoking SEG's power of attorney was to defeat SEG's ability to obtain permits that were required for the marina and that were a precondition to closing on the Property. (**ECF # 91-13**; Peyton Phillips Depo 1 at 129:5-22) Following the slew of letters written by Defendants, V.I. Senate President advised SEG on August 9, 2019, that the Senate would not be proceeding on its CZM water permit because of, inter alia, the "questionable

inclusion of…13 Rem. Estate Carolina." (**ECF # 91-14**). Jim Phillips stated that his son exceeded his authority in stating to various government agencies that his parents would not sell the Property to SEG. (**ECF # 91-15**; Deposition of James Owen Phillips at 58:2-25 through 64:1-6)

James Peyton Phillips was not acting in his parents best interest, but was attempting to thwart the sale the Property so that he could develop his own marina utilizing his parents' Property. Indeed, James Peyton Phillips was conspiring with a member of the Virgin Islands CZM committee, David Silverman, to defeat SEG's project so that they could implement their own "dock concept." Silverman explicitly advised James Peyton Phillips to keep his name away from the new dock concept because it constituted a conflict of interest. (**ECF # 91-16**; e-mails between David Silverman and James Peyton Phillips).

James Peyton Phillips was further attempting to derail SEG's marina and sale of his parent's Property so that he could build a hotel on that Property. (**ECF # 91-17**; E-mails between Paul Sabers and James Peyton Phillips)

James Peyton Phillips admitted that the "floating dock concept" he was seeking to implement would be property slated to be used in SEG's marina. (**ECF # 91-13**; Peyton Phillips' Depo 1 at 152-153).

As late as September 16, 2019, James Peyton Phillips was inquiring with David Silverman (of the CZM Committee) as to whether he was still interested in leasing land from Defendants for another planned dock in Coral Bay. (**ECF # 91-18**; September 16, 2019, e-mail from James Peyton Phillips to David Silverman). Indeed, James Peyton Phillips went so far as to admit that he was going to have an "ambulance chasing firm" go after Rick Barksdale and Chalise Summers to "bleed" them. (**Id.**)

James Peyton Phillips had no authority to lease out his parents Property for a marina project to David Silverman and, as such, he exceeded the extent of any power of authority given to him by his parents in interfering with SEG's contract with them. (**ECF # 91-2**; Rodriguez Depo. at 102:20-24); (**ECF # 91-15**; Jim Owen Phillips Depo. at 75:5-9). Because of the delays caused and contributed to by Defendants, the Legislature did not ratify the subject local permits until December 21, 2020. (**ECF # 91-19**).

Because of the delays caused or contributed to by Defendants, SEG has incurred in excess of $9 million in additional expenses in pursuing its marina.

## LEGAL ISSUES PRESENTED

The legal issues that have been presented, or may be presented, include the following:

*I. James Owen Phillips and Genoveva Rodriguez engaged in anticipatory breach/repudiation.*

"An anticipatory breach of contract is a party's repudiation of his contractual duty before the time fixed for his performance has arrived." *Urh v. Buffo*, 2018 WL 1020673, at *6 (V.I. Super. Ct. Feb. 20, 2018). "[T]he doctrine applies only if a party's anticipated breach is material and the party's repudiation of the contract is an unqualified refusal or declaration of inability to perform his prospective contractual obligations." *Id.* at *8. "[A]n anticipatory breach or anticipatory repudiation centers upon an overt communication of intention or an action which renders performance impossible or demonstrates a clear determination not to continue with performance." *Id.* at *9. As this Court has explained:

> Repudiation occurs when a party to a contract makes clear his intent to breach the agreement before the time to perform has arrived. […] The remedy for anticipatory breach, as repudiation is also known, is the right of the non-breaching party to immediately seek damages for a total breach of the contract. []

> Two elements must exist in order to support a finding of repudiation. First, the obligation repudiated must be so essential to the purpose of the contract that non-performance makes the agreement worthless. [] Otherwise, only a partial breach may be found. Secondly, there must be an "absolute and unequivocal refusal to perform." [] Thus, courts have refused to find repudiation where a party has merely threatened non-performance or has offered to rescind the contract. []
>
> It is not required that the breaching party make a point blank declaration, because an act may also constitute repudiation. Restatement, *supra* § 250(2); *Corbin*, *supra* §§ 959, 973. It must, however, be "a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach." Restatement, *supra* § 250(a).

*United Corp. v. Reed, Wible & Brown, Inc.*, 22 V.I. 201, 203–04, 626 F. Supp. 1255, 1257–58 (D.V.I. 1986)(some citations omitted).

While most cases regarding repudiation/anticipatory breach involve some nuance regarding whether repudiation actually transpired, there is no need divine the intent of the Defendants here as they have explicitly stated, in writing, that they will not honor their written agreement with SEG. *See In re Wansdown Properties Corporation N.V.*, 620 B.R. 487, 500 (Bkrtcy.S.D.N.Y., 2020) ("Ordinarily, anticipatory repudiation presents a question of fact but when the anticipatory repudiation is expressed in writing it may be decided as a question of law.")

The essential term of the contract for sale of the Property is that the Phillips close when required by the terms of the agreement and the amendments thereto. The parties entered into a contract for sale of the Property on December 2, 2013. SEG has paid $135,000 to Defendants for the contract and amendments. There were two amendments to the contract for sale with Jim Phillips and Genoveva Rodriguez freely admitted that they have been paid consideration for the contract and the amendment. The second amendment to that contract, executed by Defendants on June 27, 2016 and then sent by them to SEG for acceptance and execution on July 5, 2016 provided that:

> 2. Paragraph 4 of the Original Contract, and item "2." of the [First] Amendment to Contract shall be deleted and replaced with the following: The Closing shall take place on St. Thomas or St. John, U.S. Virgin Islands within one (1) week upon receipt of U.S. Army Corps of Engineers (USACE) and U.S. Virgin Islands CZM (CZM) permits as long as neither permit is appealed. Should Closing be delayed beyond a time period that is deemed unacceptable after U.S. Army Corps of Engineers and U.S. Virgin Island CZM permits are issued and not appealed, both Seller and Buyer reserve the right to cancel the Contract by supplying written notification to the other party, informing the other party that in 30 days the Contract will become null and void. If for any reason closing does not take place, all deposits become non-refundable.
> 3. Except as expressly amended hereby, the terms of the Original Contract, shall remain in full force and effect.

Defendants, however, began to attempt to extort additional funds from SEG, threatening to back out of the agreement if they were not paid additional sums and if SEG did not execute a new agreement with additional terms. A timeline of the threats and declarations of express intention to not honor the agreement to sell the Property to SEG is as follows:

- On June 16, 2017 Jim Phillips and Genoveva Rodriguez send a letter to SEG demanding SEG pay additional sums to them and agree to other terms or they would exercise some non-existent option to revoke the contract for sale and the other obligations under the agreements, stating:

  > As generally required by contracts of this nature, the above-mentioned requirements are boilerplate. If, however, these requirements exceed what you are prepared to accept and proceed with, we exercise the option to revoke the original Contact of Sale and release ourselves of all terms and conditions as previously set forth in said contract, as well as all amendments and power of attorney proceeding said contract. We greatly appreciate your efforts these past five years, however, our obligations as beneficiaries of this parcel must take precedence.

- On June 26, 2017, SEG's attorney responded to the letter advising that the contract was not expiring and that closing would take place upon the issuance of the CZM and USACE permits.
- On August 18, 2017, James Peyton Phillips, purporting to act as counsel for his parents (but who is not an attorney), wrote a letter to SEG claiming that the contract for sale and amendments were "unenforceable" and that his parents would not honor them.

- On October 19, 2017, Jim Phillips and Genoveva Rodriguez sent a letter to the Virgin Islands Legislature attesting that they were revoking all Powers of Attorney and Authorizations for SEG to apply for permits utilizing the Property.

- On May 13, 2019, James Peyton Phillips sent a letter to the Virgin Islands Legislature presenting himself at the "legally authorized representative" of his parents. In that letter, James Peyton Phillips declared that:

  > As the owner of the most significant of the five remaining parcels, we are writing this letter to inform you that **we have revoked any and all authority from the Summer's End Group for permitting and development activity on our parcel**, including any activity on our shoreline or within the water rights of our property. Our parcel includes over half of the waterfront, and consequently over half of the marina footprint of the Summer's End Group proposed marina. **Removing this parcel from the plans will require a major redesign of the Summer's End Group marina project.**
  >
  > **The parcel that is no longer available to the Summer's End Group is the site of our retail mall known as "Coccoloba Plaza" – officially identified as Parcel 13 Remainder, Estate Carolina, Coral Bay, St. John.** We have signed an Affidavit attesting to numerous facts about our relationship with the Summer's End Group, **chief among these being that the Summer's End Group does not have the legally required interest or right to perform development on our parcel. Further, <u>we affirm that such powers shall not be conveyed by us for any development conducted by the Summer's End Group, now or in the future.</u>** Please find this Affidavit attached to this letter.

- Attached to that letter was a May 13, 2019 affidavit from Jim Phillips and Genoveva Rodriguez stating that James Peyton Phillips was their Power of Attorney regarding the Property. That letter further (falsely) stated that they could revoke their POAs to SEG to apply for permits. That affidavit further made the unequivocal statement that:

  > 6. Neither the Summer's End Group, LLC, nor Chaliese Summers, have the requisite property interest to undertake the activity proposed in their USACE permit application. Furthermore, **we have no intention of ever selling the Parcel to SEG or assigning such interest to SEG or an affiliated entity in the future.**

- On June 14, 2019, Defendants sent a nearly identical letter to the U.S. Army Corps of Engineers (where SEG had applied for a federal permit for the marina). Defendants were asking the USACE to deny the permit because, they alleged, as owners of the Property, they would not allow such development to take place. As they did with the Virgin Islands Legislature, the Defendants expressly proclaimed that: "**the Summer's End Group does not have the legally required interest or right to perform development on our parcel. Further, <u>we affirm that such powers shall not be conveyed by us for any development conducted by the Summer's End Group, now or in the future."</u>**

- That letter also asked the USACE to deny the permit asserting that the Code of Federal Regulations required the applicant (SEG) verify that it either possessed or would possess the requisite property interest to undertake the proposed activity and that "[i]n the case of the Summer's End Group application, **the applicant does not have any property interest in Parcel 13 Remainder, and, as the owner of that parcel, <u>we are *definitively* stating that this application will never have that interest</u>**."

Here, the parties have an enforceable contract for the sale of the subject property. As outlined above, Jim Phillips and Genoveva Rodriguez have expressly admitted that they will not honor the terms of the agreement for sale of the property. The anticipatory breach is material as it goes to the very heart of the agreement, that is the actual sale of the property. Their repudiation is also unqualified as they have stated that "we are definitively stating" that SEG would never have any property interest in Parcel 13 Remainder. The repudiation of Jim Phillips and Genoveva Rodriguez was so essential to the purpose of the contract that it renders the agreement worthless. *See United Corp, supra*. As such SEG has proven its right to recovery for anticipatory breach. *See Urh, supra* at * 8.

*II. James Owen Phillips and Genoveva Rodriguez have breached their contract with SEG.*

"In the Virgin Islands, the required elements of a breach of contract claim are: '(1) the existence of a contract between the parties; (2) that the defendant breached a material duty imposed by that contract; and (3) that damages resulted from the breach.'" *Weiss v. Maccaferri,*

*Inc.*, 2016 WL 1451530, at *5 (D.Virgin Islands, 2016). Jim Phillips and Genoveva Rodriguez were required by contract to:[1]

> Within 72 hours of payment of the initial $50,000.00 deposit provided for in Paragraph 2 above. **Seller shall execute and deliver to Buyer an original, executed, Limited Power of Attorney document a copy of which is attached hereto and expressly approved by both Buyer and Seller appointing Buyer as Seller's attorney in fact for the sole and limited purposes of providing the Buyer with the legal authority to apply for all CZM and Army Corps of Engineer permits Buyer desires to enable the development and construction of a marina and related structures on the property, per Buyer's plans and specifications, which Seller shall first review.**
>
> All permits shall be issued in Buyer's name if possible or otherwise in the Sellers' name, in which case they Shall be assigned to Buyer, or Buyer's designee, at closing. Seller makes no representation with respect to whether any permits issued in Seller's name will be transferrable to Buyer. Other than Sellers' obligation to execute an assignment to Buyer of any permits issued in Sellers' name, Buyer shall be responsible for the transfer of any permits. **Seller also agrees to execute all further documents, in addition to a modified Limited Power of Attorney, as may be reasonably needed or requested by Buyer or by the Virgin Islands Department of Planning and Natural Resources, Virgin Islands Coastal Zone Management department, or United States Army Corps of Engineers**.

In its motion for summary judgment, Defendants admit that they violated the terms of this contract by "notifying the Virgin Islands Legislature that the authority previously granted to SEG to apply for permits involving the Property had been revoked was dated October 9, 2017[.]"

[1] This contract was written by Jim Phillips and Genoveva Rodriguez's agent, Islandia Real Estate.

Q You understand that Islandia Real Estate was your realtor; is that correct?
A Yes.
Q And they sent a contract over to the people for The Yacht Club at Summer's End for the sale of your property at Parcel 13 Remainder Carolina; is that correct?
A Yes.

Jim Phillips Dep at 28-29.

[ECF # 87 at 8]. Defendants claim that this cannot constitute a breach of the contract because the contract was not enforceable. [Id.] But the contract is fully executed and enforceable in this case. The entire basis for claiming that contract was unenforceable is based on the claim that "writs of review" filed by third parties constitute an "appeal" under the contract thus alleviating of their obligation to comply with the contract. But because that contention is legal unsound, Defendants have now admitted to breaching their contract with SEG.

Because Defendants James Owen Phillips and Genoveva Rodriguez have admitted to breaching their contractual obligations to SEG by revoking powers of attorney and refusing to withdraw their assertions to various government entities regarding the contract for sale of the Property, they have breached their contract with SEG.

*III. James Owen Phillips and Genoveva Rodriguez have breached their duty of good faith and fair dealing.*

Despite the fact that the contract for sale and amendments thereto specifically provided that closing would take place upon receipt of the CZM and USACE permits, James Owen Phillips and Genoveva Rodriguez, both directly and through their son, Defendant James Owen Phillips, actively took steps to impede SEG's pursuit of those permits. It is axiomatic that:

> Every contract has an implied, if not explicit, covenant of good faith and fair dealing. The implied covenant recognizes that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. A party breaches the implied covenant of good faith and fair dealing by taking actions that deprive another party of the benefits for which it had bargained.

*Urh, supra* at *8. This Court outlined the elements of such a cause of action as follows:

> The elements for a breach of the implied covenant of good faith and fair dealing are: "(1) that a contract existed between the parties, and (2) that, in the performance or enforcement of the contract, the opposing party engaged in conduct that was fraudulent, deceitful, or otherwise inconsistent with the purpose of the agreement or the reasonable expectations of the parties." *Speaks*, 2009 WL 167330, at *5 (citing *LPP Mortgage Ltd. v. Prosper*, 2008 WL 5272723, at *2 (D.V.I. Dec. 17, 2008)).

*Daus v. Gardiner*, 2015 WL 1969140, at *3 (D.Virgin Islands, 2015).

Here, it is undisputed that Jim Phillips and Genoveva Rodriguez breached the duty of good faith and fair dealing. The contract for sale and the amendments thereto expressly recognized that the purpose of the transaction to sell the Property was so that SEG could utilize the Property for its marina. Indeed, the initial contract required them to execute documents "to enable the development and construction of a marina and related structures on the property, per Buyer's plans and specifications… ." Moreover, the condition precedent to closing on the Property is the issuance of the CZM permit and the USACE permit for the marina.

The Phillips, either directly or through their son, James Peyton Phillips, engaged in a prolonged campaign to interfere with SEG's ability to obtain a Coastal Zone Management and US Army Corps of Engineer's permit for the proposed marina. The Phillips sent letters to just about every governmental body in the federal or local government that had anything to do with permitting the marina project. Defendants sent letters to virtually every government agency and representative in a calculated attempt to defeat SEG's ability to obtain its permits. Their crusade was relentless and continues to this day. They advised every interested governmental agency and body that they would not sell the Property to SEG and admitted their intention was to quash SEG's ability to get the permits needed for closing.

Jim Phillips and Genoveva Rodriguez were required to execute documents to assist SEG in obtaining the necessary permits instead they did everything in their power to derail the process and have governmental agencies deny these permits. This has caused prolonged delay in the process and frustrated the process of obtaining permits, which would trigger the closing here. As such, it is undeniable that SEG has a contract with Jim Phillips and Genoveva Rodriguez and that Defendants engaged in conduct that was inconsistent with the reasonable expectations of the

parties. For when a contract for sale literally spells out that governmental permits and required for closing, and the selling parties engages in conduct specifically engineered to have governmental agencies deny those permits, that conduct, by definition, is inconsistent with the reasonable expectations of the parties. *See Daus, supra*. Because Jim Phillips and Genoveva Rodriguez took steps to preclude the issuance of the permits, they took actively engaged in conduct to injure the rights of SEG to receive the benefits of its contract with them. *See Urh, supra*. As such, they have each breached their duty of good faith and fair dealing.

## *IV. James Peyton Phillips has tortuously interfered with the contract between his parents and SEG.*

James Peyton Phillips is not now, nor has he ever been, an attorney. Nevertheless, he has enjoyed giving his parents incorrect legal advice, and suggesting to various persons and entities that he was a "legal representative" for his parents in regard to the Property. James Peyton Phillips has induced his parents to not perform their contractual obligations and, in fact, to take active steps to destroy the agreement. This Court has advised that:

> The elements of a claim for tortious interference with a contract under Virgin Islands law are "that (1) the accused intentionally (2) and improperly interfered (3) with the performance of a contract between the movant and a third party (4) by inducing or preventing a third party from performing the contract." *Edwards v. Marriott Hotel Mgmt. Co. (V.I.), Inc.*, 2015 WL 476216, at *9 (D.V.I. Jan. 29, 2015) (citing *Benjamin v. Thomas Howell Grp.*, 2002 WL 31573004, at *3 (D.V.I. Apr. 22, 2002), *aff'd sub nom. Benjamin v. Gen. Accident Ins. Co. of P.R.*, 90 F. App'x 434 (3d Cir. 2004)).

*Dorval v. Fitzsimmons*, 2020 WL 376989, at *5 (D.Virgin Islands, 2020). This Court has further explained:

> The Restatement (Second) of Torts defines tortious interference with a contract as [o]ne who intentionally and improperly interferes with the performance of a contract ... between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to

> perform the contract. Restatement (Second) of Torts, § 766 (1979); *see also Government Guar. Fund of Fin. v. Hyatt Corp.*, 35 V.I. 356, 369, 955 F.Supp. 441, 452 (D.V.I.1997) (listing the elements of tortious interference).
>
> In addition to these elements, I must also look, *inter alia*, at the defendant's conduct and motive in determining whether THG tortiously interfered with the plaintiffs' insurance contracts. *See id.* § 767; *see also Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1170 (3d Cir.1993) (noting that the plaintiff must establish that the defendant "specifically intended to harm [him]")

*Benjamin v. Thomas Howell Group*, 2002 WL 31573004, at *3 (D.Virgin Islands, 2002).

The documentary evidence establishes that James Peyton Phillips reasoning for interfering with the contract between his parents and SEG was to stop the marina project from proceeding so that he could proceed with his own marina project and a hotel scheme to be situated on his parents Property. His interference worked, causing considerable delay is the issuance of the final CZM permit. Not only did James Peyton Phillips induce his parents to not comply with their contractual obligations, but he did so for his own personal benefit.

Because he was self-dealing, James Peyton Phillips contention that he was acting as the "power of attorney" or agent[2] for his parents, is of no moment. In *Orange Lake Country Club, Inc. v. Reed Hein & Associates, LLC*, the Court explained:

> But "an agent's 'privilege to interfere' with the contracts of its principal is not absolute." [] "The privilege is divested when the defendant acts solely with ulterior purposes and the advice is not in the principal's best interest." [] "In other words, parties are disqualified from asserting the privilege if they act maliciously or with conspiratorial motives."

*Orange Lake Country Club, Inc. v. Reed Hein & Associates, LLC*, 2019 WL 7423517, at *16 (M.D.Fla., 2019). Here, it is undisputed that James Peyton Phillips tortuously interfered with the contract between his parents and SEG. First, James Peyton Phillips began interfering with the sale contract in 2017, but he was not the granted power of attorney until 2019, two years after he

[2] "A person who holds power of attorney is an agent… ." *Ellis v. Thompson*, 590 S.W.3d 774, 780, 2019 Ark. App. 579, 10 (Ark.App., 2019)

began attempting to interfere with the sale of the Property. As such, he enjoyed no "agency" defense at until 2019. Moreover, because he had ulterior self-serving motives in interfering with the contract and the project, and did so to the detriment of his parents, he cannot assert any such privilege.

First, James Peyton Phillips is the author of the vast majority of the letters in which he claims legal authority regarding the Property, and in which he states that they will not honor the contract and sell to SEG. Moreover, in making the "definitive" statement that they would never sell to SEG, Jim Phillips conceded that James Peyton exceeded the scope of his authority. *See Bray & Gillespie Management LLC v. Lexington Ins. Co.*, 527 F.Supp.2d 1355, 1368 (M.D.Fla.,2007)("the agent can be considered a third party to the contract for the purposes of a tortious interference claim if the agent acts outside the scope of agency or is not acting in the principle's best interests."); *Whitecap Investment Corp. v. Putnam Lumber & Export Company*, 58 V.I. 648, 653, 2013 WL 2365111, at *2 (D.Virgin Islands, 2013)(noting agent can be held liable when he exceeds scope of authority.) When asked about the fact that his son sent letters to various government agencies espousing the fact that they would never sell the Property to SEG, Jim Phillips testified that James Peyton Phillips "may have overstepped his boundary a bit."

In addition, James Peyton Phillips was conspiring with various opponents to the marina project to install their own marina and hotel on the same land SEG intended to use for its marina. Because it is undisputed that James Peyton Phillips tortuously interfered with the contract between his parents and SEG, and because these acts were done before he was designated as a power of attorney, and was further done for his own purpose, he is liable to SEG as a matter of law.

*V. SEG is entitled to declaratory judgment for specific performance of the contract for sale of the Property.*

SEG raised a claim for Declaratory Judgment in its complaint. [ECF # 1 at 12]. SEG is entitled to declaratory judgment that it retains equitable title in the Property and that it is entitled to specific performance of the Contract for Sale and amendments thereto, which requires Defendants to sell the Property to SEG upon issuance of the US Army Corps of Engineer's permit.

First, SEG holds equitable title to the Property subject to its Contract for Sale and the amendments thereto. It is axiomatic that "[t]he concept of equitable title … appl[ies] in the Virgin Islands to a contract to purchase land… ." *DeCastro v. Stuart*, 2004 WL 744194, at *5 (D.V.I. Apr. 2, 2004). As Justice (then Judge) Cabret explained, "[i]t is the well settled doctrine of our courts of equity that, **under a contract for the sale of lands, the purchaser becomes the equitable owner of the lands**,... ." *Griles v. Griles*, 1998 WL 707773, at *3 (Terr. V.I. Sept. 29, 1998), *aff'd,* 2001 WL 674164 (D.V.I. May 31, 2001)(emphasis added)(citation omitted). An equitable owner is defined as:

> One who is recognized in equity as the owner of the property, **because the real beneficial use and title belong to him, although the bare legal title is vested in another** ... one has a present title in land which will ripen into legal ownership upon the performance of the conditions subsequent. There may therefore be two "owners" in respect to the same property, one the...**legal owner, the other the beneficial or equitable owner**. BLACK'S LAW DICTIONARY, at 1996 (5th ed.1979).
>
> **An equitable title holder holds a real property interest that he can transfer and ... mortgage. As holder of the legal title, the mortgagor also owns a real property interest, but he holds the title simply as security for the payment of the contract debt and as trustee for the mortgagee.** Powell on Real Property § 85D.D1 (2000).

*Williams v. Mackay*, 2011 WL 98401, at *2 (D.V.I. Jan. 6, 2011)(emphasis added). "Execution of a contract for the sale of realty vests equitable title to the realty in the purchaser. [] The seller

retains legal title only as a security against the purchase price." *Posel v. Redevelopment Auth. of City of Philadelphia*, 72 Pa. Cmwlth. 115, 121, 456 A.2d 243, 246 (Pa. Cmwlth. 1983). "An equitable title is superior to legal title to the property… ." *Cadle Co. v. Harvey*, 46 S.W.3d 282, 287 (Tex. App. 2001).

Defendants have continued to interfere with SEG's ability to obtain the permits outlined in the Contract for Sale and amendments. As such, SEG is entitled to declaratory judgment that it is entitled to specific performance upon the happening of the conditions precedent in the Contract for Sale and Amendments. *See Berryhill v. Hatt*, 428 N.W.2d 647, 658 (Iowa,1988)("The legal remedy only determined the rights and duties of the parties up to the time the jury rendered its verdict. Specific performance would cover the **future rights of the parties and the closing of the real estate contract transaction**. We deem specific performance to be an appropriate, supplemental remedy to serve justice in this case.") As such, this Court should declare that Defendants are required to close on the subject Property with SEG upon the issuance of the permits as contained in the agreement between SEG and Jim Phillips and Genoveva Rodriguez.

*VI. Plaintiff is entitled to compensatory and punitive damages.*

a. Compensatory Damages

First, it is undisputed that SEG has paid (and Defendants have accepted) $135,000 in non-refundable deposits for the sale/purchase of the Property. [ECF # 91 at ¶ 9]; [ECF # 91-4 (Defendants' Supplemental Response to Interrogatory # 9)("Plaintiff has paid $135,000 in nonrefundable deposits pursuant to the alleged Contract of Sale and Subsequent Amendments. These payments were in consideration for entering the alleged Contract of Sale and Subsequent Amendments.") By committing anticipatory breach, breach of contract, breach of the duty of

good faith and fair dealing, and tortuous interference with contractual relations, Defendants have, as a matter of law, caused SEG to lose at least $135,000. Defendants further glibly admit that they launched an unrelenting campaign in opposition to the marina and SEG's application for both the CZM and USACE permits. [ECF # 87 at 13-15].

Defendants claim because there were other contributing factors leading to delays in permitting, that causation cannot be established against them. [Id.] But that is not the standard by which causation is measured.

It is axiomatic that "[t]he 'causal nexus' ... is one of proximate cause.' 'Plaintiffs are required to prove only that defendant's conduct was a cause of damages.' And Plaintiffs 'need not prove that [defendant's] conduct was the sole cause of damages." *Harnish v. Widener University School of Law*, 931 F.Supp.2d 641, 653 (D.N.J.,2013)(citation omitted). "The **conduct may be a substantial factor as long as it is significant or recognizable. It need not be quantified as large or considerable**." *In re Asousa Partnership*, 2005 WL 775429, at *6 (Bkrtcy.E.D.Pa., 2005).

Defendants undeniably began their unrelenting crusade to block SEG from obtaining its formalized CZM permit in 2017. As late as August 2019, the President of the V.I. Senate was still advising SEG that:

> **This letter is written to advise you that the 33 Legislature of the Virgin Islands will not be proceeding on Major Coastal Zone Permit No. CZJ-04-14(W), issued to The Summer's End Group, LLC at this time.** The decision to delay this hearing is supported by the magnitude of concerns, **including pending litigation, questionable inclusion of Parcel Nos. 13A, 13B, and 13 Rem. Estate Carolina in project plans**, and the matter of the consolidated land and water permit, which is to be submitted in compliance with the order of the Board of Land Use Appeals. As a result of these unresolved issues, compliance with the Virgin Islands Coastal Zone Management Act precludes the 33rd Legislature of the Virgin Islands from proceeding on this matter.

[ECF # 91-16]. At the time of this letter, the "litigation" included in the Senator's Francis' letter included the Owner/Defendants' lawsuit against SEG seeking to have the agreement to sell Rem. 13 Estate Carolina declared unenforceable, which was filed in 2018. This is further supported by Senator Francis' statement that one of the reasons he was not taking up the issue was the "questionable inclusion of…13 Rem. Estate Carolina." [Id.] Because of these delays to which the Defendants contributed, the major CZM permit (consolidated) was not approved by the V.I. Legislature until December 21, 2021. [ECF # 91-21].

Here, the delays attendant in obtaining the CZM permit bled over into the USACE process as well. Jeff Boyd, who in is the business of marina construction and development and has considerable experience in dealing with the US Army Corps of Engineers confirmed that the US Army Corps of Engineers will not act on the federal permit until such time as the local permit has been ratified by the Legislature.

Mr. Boyd calculated those costs attributable to the delay to be in the several millions of dollars.[3] SEG member and 30(b)(6) deponent Richard Barksdale further confirmed the expenses and delay attributable to the Defendants, testifying:

> Q Did Summer's End have to reallocate any monies earmarked for Army Corps permits or for studies to address the delays caused by the Phillips family?
>
> A Yes. It was millions of dollars. Because what happens is because of the delays that were created by the Defendants' claims, we not only – we lost time, as I mentioned earlier, and lost traction with investors, but also with the Army Corps process because we raised funds; I don't remember if it was Fund 3 or Fund 4. We were moving along just extremely well in 2017 until the Defendants made their allegations, and we had secured funding to go ahead and finish up our Army Corps permit, in other words, to wrap it up. We'd go ahead and get this approval in 2017. We'd go right with the Army Corps because we were more or less up to date with the things that they needed. And so as a result of this process being delayed on the territorial side, it created a tremendous amount of expense with the Army Corps, and it continues to this day.

---

[3] [ECF # 94-1 (Exhibit 47 to Defendants' SUMF)] (under seal).

> There were -- the longer the delays --because time is money in development, and so the longer the project goes on -- and the Defendants know that as well as their co-conspirators. And so the monies that we had earmarked and targeted for wrapping up the Army Corps permit, those had to be expended to address the delays caused by the Defendants. That's in the millions of dollars.[4]

Barksdale continued:

> And so it was consistent. **We received consistent communication from Army Corps saying, well, you don't have your territorial permit complete, we need your territorial permit. And so the longer that went on, funds that I had allocated to wrap up with Army Corps had to be re-purposed to address the delays caused by the Defendants.** And the problem there is now I don't have any money to work with the Army Corps, so now I've got to go raise more money. So, again, it's in the millions of dollars, the amount of time -- the amount of money and a considerable amount of time and resources, personnel resources to delay their erroneous claims.[5]

The evidence here more than establishes that SEG suffered financial damage as a direct and proximate result of Defendants concerted actions to inhibits formal ratification of the CZM permit. That delay caused attendant delays in the issuance of the USACE permitting process which continues through this day. While not the sole cause of SEG's damages, Defendants' actions were significant or recognizable cause thereof. As such, SEG has come forth with evidence to establish causation and damages. *See Harnish, supra.; In re Asousa Partnership, supra.*

SEG's compensatory damages are calculated as follows:

| | | |
|---|---|---|
| **Lender** | **Charge** | **Total** |
| **Legal Fees** | | $ 312,643.74 |
| Moore Dodson & Russell, P.C. | $ 49,570.61 | |
| Law Offices of Benham & Chan | $ 86,254.40 | |
| The Cattie Law Firm, P.C. | $ 31,082.00 | |
| Pavese Law Firm | $ 145,736.73 | |
| **Additional Loans** | | $ 1,811,000.00 |

---

[4] CSUMF ¶ 4.

[5] CSUMF ¶ 4.

| | | |
|---|---|---|
| Fund 3 | | |
| Toby Arceneaux | $ 25,000.00 | |
| Kristal McDowell | $ 10,000.00 | |
| Island Investco,LLC | $ 1,300,000.00 | |
| Fund 4 | | |
| Island Investco,LLC | $ 400,000.00 | |
| Chaliese Summers & Rick Barksdale | $ 58,000.00 | |
| Fund 5 | | |
| Chaliese Summers & Rick Barksdale | $ 18,000.00 | |
| **Loan Interest** | | $ 4,985,109.81 |
| MMC Loan Interest | $ 208,286.02 | |
| MMC Consutling Fees & Interest | $ 916,407.25 | |
| Fund 3 | | |
| Island Investco,LLC | $ 3,060,416.54 | |
| Fund 4 | | |
| Island Investco,LLC | $ 800,000.00 | |
| **Additional Studies & Professional Fees** | | $ 264,875.88 |
| Bioimpact | $ 90,617.42 | |
| JJ Creative | $ 52,931.40 | |
| Tourism Economics | $ 9,500.00 | |
| LIWI | $ 15,000.00 | |
| LH Sprague Consulting,LLC | $ 1,500.00 | |
| Sea Diversified | $ 95,327.06 | |
| **Deposits No. 13 Remainder** | $ 135,000.00 | $ 135,000.00 |
| | | |
| **Land Costs** | $ 50,000.00 | $ 50,000.00 |
| | | |
| **Employee Salaries** | | $ 1,200,000.00 |
| June-December 2017 | $ 180,000.00 | |
| 2018 | $ 360,000.00 | |
| 2019 | $ 360,000.00 | |
| 2020 | $ 300,000.00 | |
| **Operating Expenses** | | **$1,103,345.50** |
| June-December 2017 | $ 163,386.24 | |
| 2018 | $ 324,369.12 | |
| 2019 | $ 335,776.44 | |

| | | |
|---|---|---|
| 2020 | $ 279,813.70 | |
| **Total** | **$9,861,974.93** | |

b. Punitive Damages.

The Virgin Islands Superior Court has advised that:

> Punitive damages are "damages awarded in cases of serious or malicious wrongdoing to punish or deter the wrongdoer or deter others from behaving similarly — called also exemplary damages, smart money." Merriam-Webster's Dictionary of Law 120 (2005); *see also* Black's Law Dictionary 448 (9th ed. 2009) ("Damages awarded in addition to actual damages when the defendant acted with recklessness, malice, or deceit; specific damages assessed by way of penalizing the wrongdoer or making an example to others."). Punitive damages must be based upon conduct that is not just negligent but shows, at a minimum, reckless indifference to the person injured — conduct that is outrageous and warrants special deterrence. *Brathwaite v. Xavier*, 71 V.I. 1089, 1111 (2019).

*Salkeld v. Marriott Ownership Resorts (St. Thomas), Inc.*, 2020 VI SUPER 81U, ¶ 14, 2020 WL 8457891, at *4 (V.I.Super., 2020).

Here, the behavior of Defendants, particularly that of James Peyton Phillips, rises to the level necessary for the imposition of punitive damages. James Peyton Phillips engineered the strategy to delay and destroy SEG's ability to obtain permits for the marina project to thwart the sale of his parents' Property. Couple that with the fact that he also conspired with a member of the CZM committee and was actively attempting to utilize his parents' land and Property for a separate dock project, and for a hotel, and SEG has clear evidence that his behavior outrageous conduct that warrants deterrence.

c. Attorney's fees, costs, and interest

Because this case is before this Court on diversity jurisdiction, this Court applies federal procedural law and local substantive law. SEG is entitled to attorneys' fees for it claims, as they are not related to personal injury. See 5 V.I.C. § 541(b). Interest is also available to a prevailing

party under Virgin Islands law. *See* 11 V.I.C. § 951 and 5 V.I.C. § 426. Should Plaintiff prevail, SEG will file a motion for fees, costs, and interest as applicable.

Respectfully submitted,

Date: October 11, 2021

The Cattie Law Firm, P.C.

By:/s/ DAVID J. CATTIE
DAVID J. CATTIE, ESQ.
V.I. Bar No. 964
1710 Kongens Gade
St. Thomas, Virgin Islands 00802
Telephone: 340.775.1200
Facsimile: 800.878.5237

david.cattie@cattie-law.com